IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NANCY GRAYSON, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-865-SM |
| ) | |
| MARTIN O'MALLEY, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ) | |
| ADMINISTRATION,[1] ) | |
| ) | |
|    Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

Nancy Grayson (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 6, 7.[2]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law

---

[1]  Martin O'Malley, as Commissioner of the Social Security Administration, is substituted as Defendant in this suit. *See* Fed R. Civ. P. 25(d).

[2]  Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record (AR) will refer to its original pagination.

Judge (ALJ) "failed to follow the [Appeals Council's] remand order" and did not properly evaluate her incontinence symptoms. Doc. 10, at 4. After careful review of the record, the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform an alternative

work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984)).

## C.  Relevant findings.

### 1.  Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 1366-76; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)  had not engaged in substantial gainful activity since November 6, 2018, the alleged onset date;

(2)  had the following severe impairments: hypertension, hypothyroidism, obesity, status post ovarian cancer;

(3)  had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)  had the residual functional capacity[3] (RFC) to perform light work, except that she can frequently climb ramps/ stairs, balance, stoop, kneel, crouch, and crawl, but cannot climb ladders, ropes, or scaffolds;

(5)  is able to perform her past relevant work as a psychiatrist;

(6)  had not been under a disability from November 6, 2018, through February 22, 2023.

---

[3]  Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

3

*See* AR 1368-76.

## 2. Appeals Council's findings.

After the ALJ's initial decision and the Social Security Administration's Appeal Council's denial of Plaintiff's request for review, *id.* at 1434-43, 1465-67, the Commissioner moved to remand before this Court. *Id.* at 1414-15. After remand, *id.* at 1417-18, the Appeals Council vacated the final decision and remanded the case to an ALJ to issue a new decision. *Id.* at 1426-28. It ordered the ALJ to resolve Plaintiff's subjective complaints related to her incontinence after obtaining additional evidence concerning her impairments, further evaluating Plaintiff's alleged symptoms, and further considering Plaintiff's RFC and her past relevant work in light of the additional evaluation. *Id.* at 1427-28.

The ALJ then issued a new decision. *Id.* at 1366-76. The Appeals Council denied Plaintiff's request for review, *see id.* at 1354-57, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011); *see also* 20 C.F.R. § 404.984(b)(2).

## II. Judicial review of the Commissioner's decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326,

4

1330 (10th Cir. 2016). "An agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax*, 489 F.3d at 1084 (defining substantial evidence as "more than a scintilla, but less than a preponderance"); *Wall*, 561 F.3d at 1052 (explaining that "'[e]vidence is not substantial if it is overwhelmed by other evidence in the record'") (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)). The Court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084. Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards, may under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quotations omitted). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v.*

5

*Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

## B. The ALJ complied with the remand order.

Plaintiff maintains "[t]he ALJ obtained no written evidence and no testimonial evidence of disability matters." Doc. 10, at 4-5. As the Commissioner points out, the ALJ conducted a second hearing with a vocational expert and included over 250 pages of additional medical evidence. Doc. 12, at 5; AR 1383-1413. And the Appeals Council declined to assume jurisdiction over the ALJ's second decision. AR 1354-57. "Under these circumstances, it is appropriate to examine the Commissioner's final decision under [the] usual standards, rather than focusing on conformance with the particular terms of the remand order." *Miller v. Barnhardt*, 175 F. App'x 952, 956 (10th Cir. 2006).

## C. The ALJ reevaluated Plaintiff's incontinence and substantial evidence supports the RFC assessment.

Plaintiff contends that the ALJ acknowledged that her incontinence treatment had only "reduc[ed] leakage accidents and reduc[ed] frequency/urgency," not resolved them. Doc. 10, at 7. She complains the ALJ's failure to include any limitation for bathroom use, access, or frequency shows the ALJ did not consider her incontinence in the RFC assessment. *Id.* at 7-9. Plaintiff also assails the ALJ's decision, maintaining he found Plaintiff "had

6

disqualified herself from benefits due to what he believed was her unacceptable amount of travel over the past five (5) years." *Id.* at 8.

The Commissioner concedes that "there is conflicting evidence in the record about the extent of Plaintiff's incontinence and the degree it is subject to control." Doc. 12, at 6. But he also points out that the ALJ considered the evidence that was inconsistent with the presence of significant work-related limitations, including Plaintiff's reported level of physical activity and travel. *Id.* at 6-9.

At step two, an ALJ must consider "whether an impairment is severe." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).

When formulating a claimant's RFC, the ALJ must consider all impairments—both severe and non-severe—singly and in combination. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]t step two, the ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to survive step two." (alternations omitted) (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004))); *see also Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) ("In determining the

7

claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"). The ALJ did so here, and Plaintiff "bears the burden of establishing a disability." *Turner*, 754 F.2d at 328; *see Zavala v. Kijakazi*, No. CIV-20-1139-STE, 2021 WL 6051107, at *4 (W.D. Okla. Dec. 21, 2021) ("[E]ven when an ALJ disregards nonsevere impairments when assessing a claimant's RFC, such an error does not necessarily warrant remand if the evidence in the case does not support a finding of functional limitations from the non-severe impairments." (citing *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013))). Plaintiff has not met her burden.

> The ALJ found:
>
> As mandated by the Federal Court and Appeals Council, the undersigned is to give further consideration to the claimant's allegations of incontinence. The claimant has alleged that her incontinence is uncontrollable, has grown worse over time, occurs 3-4 times daily, makes it difficult to work for 3 hours at a time, it is worse when carrying weight, and is her most difficult impairment; she further indicated that she has unsuccessfully attempted to treat the condition with things like pads, medication, nerve stimulation, and therapy (Exhibits 3E, p. 1, 10E, p. 2, 12E pp. 1-3, hearing testimony). The court cited to evidence that supported the claimant's allegations (Exhibits 7F, pp. 26-31, 54; 12F, pp. 37-40, 331-334, 336-339, 348-351, 353-356, 378-381, 383, 385, 390). *Having reviewed these allegations and cited records, the undersigned still concludes that the claimant's incontinence is nonsevere.*
>
> First, the record reflects that the claimant's treatment and therapy were effective at reducing leakage accidents and reducing frequency/urgency, at times even reporting normal bladder

8

> function and only using pads as a precaution (Exhibits 7F, pp. 288, 299; 12F, pp. 5, 37, 169; 18F, pp. 1, 23, 33, 49, 61; 20F, pp. 4, 19, 29). The claimant has at other times indicated normal function for a period only to have symptoms intermittently flare up, indicative that this is not a constant issue as previously alleged (Exhibit 12F, p. 376; 18F, p. 49). The general responsiveness treatment undermines the alleged severity of this impairment.
>
> Second, the claimant's level of physical activity is inconsistent with her allegations of uncontrollable incontinence. She is able to go horseback riding (Exhibits 10F, p. 1; 12F, pp. 354, 371, 376, 429; 16F, p. 57); play pickle ball (Exhibit 16F, p. 28); go on vacations, including a trip overseas to France and another to Canada (Exhibits 16F, pp. 28, 44); do ballroom dancing (Exhibit 16F, p. 44); swim as a hobby (Exhibit 16F, p. 28); and play tennis (Exhibit 16F, pp. 29, 44). *The claimant's wide range of physical ability also undermines the alleged severity of this impairment.*
>
> Regardless of the above, the undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

AR 1369-70 (emphasis added).

Plaintiff was consistently diagnosed with incontinence or mixed incontinence, and the ALJ acknowledged this. AR 887 (March 22, 2019, "less leakage," "more control"); 875-877 (March 15, 2019, "tremendous leakage" and referral to physical therapy); 387 (Feb. 26, 2019, discussion of non-surgical and elective surgical treatments for incontinence); 341 (June 12, 2019); 1181 (Jan. 14, 2020); 1206 (Jan. 21, 2020); 1201 (Jan. 28, 2020). Although she had a normal report on May 13, 2019, *id*. at 855, her doctors recommended a follow-up with a urogynecologist to address urinary incontinence. *Id*. at 858.

9

On January 14, 2020, her bladder symptoms "seem[ed] to be getting worse" after her first percutaneous tibial nerve stimulation (PTNS) treatment. *Id.* at 1181. She continued weekly PTNS treatments. *Id.* at 1201. Her February 27, 2020, goal was to stop urinary incontinence, and she added physical therapy to her PTNS treatments. *Id.* at 1227. She noted that the PTNS along with home exercise for "timed voiding" resulted in "drastic improvement," until she suffered a fractured fibula while horseback riding (late January 2020). *Id.* at 1226-27. The improvement ended with a prescribed heavy walking boot and she reported leakage. *Id.* at 1227. She stopped PTNS noting it was not helpful in February 2020. *Id.* at 1782. An April 9, 2020 follow-up general exam showed she was stable. *Id.* at 1788.

In August 2020, after pelvic floor physical therapy and prescription treatment (Vesicare), and stimulator therapy, she noted she was "better," but she noticed no difference with the stimulator or medication. *Id.* at 1692. She still reported "accidents out in public" and sought other alternatives. *Id.* An October 15, 2020, six-month follow-up general exam did not suggest any incontinence issues. *Id.* at 1798-1802.

By November 17, 2020, she was prescribed a new medication and noticed "improvement over the past week or so," and "[s]he admit[ted] her leakage seem[ed] to be sudden urgency and no control" and that she has "triggers for urgency." *Id.* at 1782. By January 4, 2021, the assessment of Plaintiff's urinary

incontinence was "unchanged," and she received her first Botox treatment for it. *Id.* at 1780. At her January 19, 2021 follow-up appointment, she reported improvement for five days, but then "worsening of leakage." *Id.* at 1770.

At a January 2021 three-month follow-up general exam, Plaintiff seemed to be "doing well," and incontinence was not mentioned. *Id.* at 1808. In February 2021, she reported she increased her activity levels including playing tennis and ballroom dancing, *Id.* at 1673. She had her second Botox injection on May 5, 2021. *Id.* at 1756-59. On May 21, 2021, her treatment provider discussed that each injection "may vary" but she should see "improvement over the next few weeks." *Id.* at 1754. A July 2021 six-month follow-up did not mention incontinence and Plaintiff reported she "feels good." *Id.* at 1813. In September 2021, she reported playing tennis, pickleball, swimming, walking, and practicing ballroom dancing. *Id.* at 1657; *see also id. at* 1658 (August 2, 2021, reported playing tennis). By December 27, 2021, she reported only one leakage incident since her last injection. *Id.* at 1744. A September 9, 2022 follow-up general exam did not mention incontinence issues. *Id.* at 1818-22.

Plaintiff testified at her December 9, 2022 hearing that she was still having frequency issues, needing to use the restroom at least once every two hours. AR 1401-02. When she has an urge she needs immediate restroom access, and sometimes she has leakage even without an urge. *Id.* at 1402. She also testified she traveled to France for a few weeks in June, she visited her

11

sister in Colorado for a few days, and likely took a weekend trip or two in Oklahoma with her husband. *Id.* at 1396-1400.

The vocational expert testified that with frequent unscheduled breaks outside of normally allotted breaks, competitive employment would not be available. *Id.* at 1410.

Plaintiff argues that she cannot be penalized for attempting to maintain normalcy in her life. Doc, 10, at 8-9. She assails the ALJ's lack of following up to determine the level of activity in her travel. *Id.* at 10. And she maintains that the activities the ALJ listed did not rely on a full and fair record because the ALJ did not follow up to determine how or if these activities were physically demanding. Doc. 15, at 4-5. But, if an impairment reasonably can be remedied or controlled by medication or therapy, it cannot sustain a finding of disability. 20 C.F.R. § 404.1530.

Here the ALJ noted multiple medical records indicating that Plaintiff's treatments and therapies reduced her urinary urgency or incontinence and leaking accidents. *Id.* at 1369, 1374 ("her incontinence issues have responded well to Botox treatment"). He also noted her reported normal bladder function. *Id.* at 1369. He concluded that "[t]he general responsiveness [to] treatment undermines the alleged severity of this impairment." *Id.*

The ALJ also pointed to Plaintiff's reported activities, which included pickleball, tennis, ballroom dancing, swimming, and international and

12

domestic travel. *Id.* at 1370.[4] The ALJ looked to the consultative medical examiner's opinion, which he found persuasive as to the lack of manipulative limitations. *Id.* at 1375. The ALJ found that opinion's absence of exertional and postural limitations inconsistent with the evidence. *Id.* And the ALJ found the state agency medical consultants' opinions persuasive in determining the RFC assessment. *Id.*

Apart from her testimony, Plaintiff has not pointed to record evidence showing that her incontinence prevented her from working. And the ALJ discounted Plaintiff's consistency, AR 1373. The ALJ addressed the subjective symptom evaluation in accordance with the regulations. A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record and Plaintiff need not be without symptoms for an ALJ to find her not disabled. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)); *see also Brown v. Bowen*, 801 F.2d 361, 362-63 (10th

---

[4] Plaintiff suffered a fractured fibula after an early 2020 fall while horseback riding and the Court recognizes Plaintiff is no longer horseback riding.

Cir. 1986) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983))).

Even where there is conflicting evidence that might have resulted in a contrary decision, this Court's review is limited to whether substantial evidence supports the ALJ's decision. The ALJ notes that Plaintiff's healthcare providers recommended activity as tolerated and that they have not recommended restrictions. AR 1372. The Court finds the ALJ's RFC determination is supported by substantial evidence and the ALJ did not err by omitting limitations because of urinary urgency or incontinence in his RFC determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[Substantial evidence] "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Based on the evidence before the ALJ, the ALJ cited substantial evidence to support the RFC determination.

## III. Conclusion.

For the above reasons, the Court affirms the Commissioner's final decision.

**ENTERED** this 30th day of April, 2024.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE